# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:

MERLE CHAMBERS,

                                           Case No. 13-11127

        Debtor.                         Hon. Denise Page Hood

_____

SAMUEL D. SWEET, Trustee,

                               (Bankruptcy Case No. 10-36716)

        Plaintiff,             (Adv. Proc. No. 11-03071)

v.

SANDRA CHAMBERS, MK CHAMBERS
COMPANY, CHAMBERS ENTERPRISES, I, LLC,
and CHAMBERS ENTERPRISES II, LLC,

        Defendants.

_____/

## ORDER REGARDING MOTION FOR SUMMARY JUDGMENT, DENYING MOTION TO PAY WITHOUT PREJUDICE, GRANTING MOTION TO COMPEL AND FOR AN EXTENSION, AND SETTING DATES

## I.    BACKGROUND/FACTS

On May 9, 2013, the Court entered an Order withdrawing the reference from the Bankruptcy Court. (Doc. No. 7) Debtor Merle Chambers filed a Voluntary Petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court") on December 23, 2010. (Doc. No. 25-1) The Bankruptcy Trustee commenced an

adversarial proceeding on February 7, 2011 alleging several claims against Defendant Sandra Chambers and related corporate entities, Defendants MK Chambers Company, Chambers Enterprises I, LLC and Chambers Enterprises II, LLC.  The claims include: Avoidance By the Trustee of the Transfer to Defendant (Sandra Chambers) Pursuant to 11 U.S.C. § 548(a)(1) (Count I); Avoidance by the Trustee of the Transfer to Defendant (Sandra Chambers) Pursuant to Michigan's Uniform Fraudulent Transfers Act ("UFTA") (Count II); Recovery of Avoided Transfer Pursuant to 11 U.S.C. § 550 (from Sandra Chambers) and Request for Injunctive Relief under 11 U.S.C. § 105 (Count III); and, Claim for Accounting of All Monies Paid Since Inception of Promissory Notes and Turnover Pursuant to 11 U.S.C. § 542 of All Records Monies Due and Owing under the Promissory Notes (Count IV) (All Defendants).  (Comp., Doc. No. 17-4)

On December 8, 2008, the Debtor assigned three Promissory Notes to his wife, Sandra Chambers, for no consideration, each in the amount of: $227,000 (dated October 1, 2007); $182,000 (dated October 1, 2007); and, $352,000 (dated October 1, 2007).  (Comp., Doc. No. 17-4, ¶¶ 12, 14, 15) On July 6, 2009, the Debtor assigned a fourth Promissory Note to his wife, Sandra Chambers, for no consideration, in the amount of $50,000 (dated September 1, 2005).  (Comp., Doc. No. 17-4, ¶ 13) The Trustee alleges that the payments made by the business entity Defendants to

2

Defendant Sandra Chambers are detrimental to the Estate and its Creditors. (Comp., Doc. No. 17-4, ¶ 18) At the time the Notes were transferred, the Debtor was indebted to numerous creditors, including, but not limited to the Debtor's ex-wife, Nadine Chambers, U.S. Bank, NA, Citi Mortgage, Inc., PNC Bank, Lapeer County Friend of the Court and Attorney John L. Lengemann, Nadine Chambers' attorney. (Comp., Doc. No. 17-4, ¶ 24) The corporate entities were dismissed from the instant action on July 25, 2015 pursuant to a stipulation between the parties. (Doc. Nos. 28, 29)

The Debtor and Defendant Sandra Chambers were married on April 24, 1993 and are still married. Beginning in 2005, the Debtor sold his interest in the dismissed corporate entities, resulting in four promissory notes at issue noted above. The Debtor took possession of all four promissory notes. In 2008 and 2009, Debtor began conveying, transferring certain properties to Sandra Chambers, including the four promissory notes at issue.

On May 29, 2014, the Court of Appeals for the State of Michigan issued an opinion regarding a post-judgment divorce proceedings on the Debtor's petition to modify or terminate spousal support pursuant to a judgment of divorce between the Debtor and his previous spouse, Nadine Mae Chambers. (Doc. No. 25-2, Resp. Ex. B, *Chambers v. Chambers,* Case Nos. 293640, 298229, 298834, Mich. Ct. App. May 29, 2014, Pg ID 392). The opinion chronicled the post-judgment proceedings

3

between the Debtor and his ex-wife, Nadine Chambers.

The Debtor and Nadine Chambers were married in 1955 and divorced on April 14, 1993.  (Pg ID 392) The divorce judgment provided that the Debtor provide permanent alimony to Nadine Chambers in the amount of $400 per week.  (Pg ID 393) The Debtor moved to modify spousal support in 2005 and after a hearing, the trial court entered an order on August 19, 2005, amending the judgment of divorce to $1,500 per month permanent spousal support effective October 6, 2004.  (Pg ID 393)  In 2008, the Debtor again sought to modify or terminate spousal support. The Debtor alleged he could no longer afford spousal support because he had retired, had no earned income, and was receiving only $35,563 in social security and other retirement benefits.  (Pg ID 393)

After discovery, the trial court held an evidentiary hearing on September 26, 2008 as to the Debtor's finances.  Evidence disclosed that the Debtor's interest in the various family companies was redeemed in October 2007, noting the four promissory notes at issue in this bankruptcy action.  (Pg ID 393) During the evidentiary hearing, the Debtor's counsel noted that Debtor's current spouse, Sandra Chambers, contributed to the post-divorce growth of the Debtor's assets.  The Debtor's counsel stated that the promissory notes could be simply assigned and gifted to Sandra Chambers "as a fiction" and then they could say the Debtor "doesn't have any assets."

4

(Pg ID 393) The evidence also showed that the Debtor had a 24-month employment contract with M.K. Chambers Company beginning October 1, 2007 with an annual salary of $41,000. (Pg ID 394) In an April 27, 2009 written opinion, the trial court determined that the interest on the promissory notes was income to the Debtor for the purpose of assessing his ability to pay spousal support and finding that the Debtor received $29,279.80 in average annual interest on three of the four promissory notes. (Pg ID 394) Along with the Debtor's Social Security benefits, his salary and the interest from the notes, the Debtor's annual income was $97,845. (Pg ID 394)

In a June 29, 2009 hearing on Nadine Chambers' motion for additional attorney fees, the Debtor argued that since the September 2008 evidentiary hearing, his income had been reduced because he had transferred his assets to his current spouse, Sandra Chambers "for estate planning purposes." (Pg ID 395) The trial court granted the additional attorney fees requested by Nadine Chambers. (Pg ID 395)

The Debtor filed another motion to terminate spousal support on October 16, 2009 claiming that he had retired on October 1, 2009 and had no "earned income," receiving only social security and Air Force retirement benefits (Pg ID 395) In a November 30, 2009 order, the trial court dismissed the motion finding that there were no changed circumstance since the trial court's previous order, that the motion was frivolous and ordered $1,500 in sanctions against the Debtor. (Pg ID 396)

5

While the Debtor's various appeals were pending before the appellate court, he ceased paying spousal support and did not pay the attorney fees as ordered by the trial court. The trial court held show cause hearings on November 9, 2009 for failure to pay attorney fees and on November 30, 2009 for failure to pay spousal support. (Pg ID 396) The trial court ordered the Debtor to pay the attorney fees and to pay all spousal support before January 19, 2010 or report to the county jail to serve 30 days for failure to comply with the order. The appellate court denied leave to appeal as to the attorney fees and as to the spousal support order for lack of merit. (Pg ID 396)

Nadine Chambers filed additional motions for attorney fees on January 5, 2010 and on February 8, 2010. (Pg ID 396-97) The Debtor responded that he had transferred his interest in the promissory notes to his current spouse and that all his assets were held jointly with his current spouse or otherwise in retirement accounts not subject to process. (Pg ID 397) After a hearing was held, the trial court entered an order on May 4, 2010 requiring the Debtor to pay $10,000 in attorney fees and costs, in addition to the $5,000 attorney fees ordered on February 3, 2010. (Pg ID 397)

The appellate court found that the Debtor's annual income was five times that of Nadine Chambers: $97,845 versus $19,128 which supported the trial court's finding that the Debtor had the financial ability to assist in paying Nadine Chambers'

6

attorney fees.  (Pg ID 399) The appellate court found that the Debtor's "post-hearing efforts to voluntarily limit his income with cooperation of the family business through his brothers and to shield his assets from legal process does not render the trial court's findings regarding the respective financial ability of the parties to afford attorney fees clearly erroneous." (Pg ID 399) The appellate court noted that "there was no showing that defendant's machinations rendered the assets and the income from the assets unavailable to defendant."  (Pg ID 399)

As to the appeal regarding the sanctions imposed against the Debtor, the appellate court found that the Debtor's stated purpose in filing the petitions "to keep all his property and income for himself and his current spouse" would also injure Nadine Chambers.  (Pg ID 401) The appellate court found that despite the plain language in the divorce judgment that Nadine Chambers was entitled to "permanent" spousal support, the Debtor "persists in pursuing a very lengthy, scorched-earth legal crusade seeking to implement his purported unilateral belief that his spousal support obligation should end at his retirement."  (Pg ID 401) The appellate court stated that the Debtor's belief "would have the effect of injuring plaintiff by limiting her support and depleting her savings in endless litigation."  (Pg ID 401)

This matter is before the Court on remaining Defendant Sandra Chambers'

Motion for Summary Judgment.[1]  (Doc. No. 17)  Also before the Court are the Trustee's Motion to Compel Sandra Chambers to Pay the Remaining Payments Due Under Bankruptcy Court's Order Dated March 20, 2011 and Hold Her in Contempt and Motion to Compel Defendant Sandra Chambers to Produce Documents and Extend Deadlines in the Court's Scheduling Order.  (Doc. Nos. 18 and 19) Responses have been filed and a hearing held in the matter.

## II.   ANALYSIS

### A.   Defendant Sandra Chambers' Motion for Summary Judgment

#### 1.   Summary Judgment Standard of Review

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict

---

[1] Sandra Chambers moves to dismiss Counts I, II and III asserting Count IV is directed to the corporate entities which have been dismissed.  However, the Court's reading of Count IV shows that Sandra Chambers is a named defendant in that count as well.  See, Count IV ("all Defendants immediately provide an accounting ...") (Doc. No. 17-4, Pg ID 193).

for the nonmoving party." *Id.* Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

### 2. Count I: Avoidance of Transfer, 11 U.S.C. § 548(a)(1)

#### a. Two-Year Reach Back; December 8, 2008 Transfers

Sandra Chambers seeks summary judgment as to the Trustee's claim in Count I for avoidance of transfer under 11 U.S.C. § 548(a)(1). The Trustee seeks avoidance of the 2008 and 2009 transfers of promissory notes between the Debtor and his current wife, Sandra Chambers. Sandra Chambers asserts that three of the four

promissory notes at issue were transferred from the Debtor to Sandra Chambers on December 8, 2008, more than two years before the filing date of the Debtor's bankruptcy petition. The fourth note transferred on July 6, 2009 from the Debtor to Sandra Chambers is within the two years of the filing of the Debtor's bankruptcy petition. Sandra Chambers argues that the notes transferred beyond the two years before the bankruptcy petition was filed cannot be avoided under § 548(a)(1). Sandra Chambers asserts that the notes were transferred as part of estate planning between the Debtor and his current wife.

Section 548 of the Bankruptcy Code, in relevant part, allows avoidance of fraudulent conveyances:

> (a)(1) The trustee may avoid any transfer ... of an interest of the debtor in property, or any obligation ... incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily–
>> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
>> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; ...

11 U.S.C. § 548(a)(1). The term "value" under this section "does not include an

unperformed promise to furnish support to the debtor or to a relative of the debtor."

11 U.S.C. § 548(a)(2).  A transfer which occurs outside the permissible two year

reach-back period for fraudulent transfer claims provided under § 548(a)(1) is time

barred and must be dismissed. *In re Grove-Merritt,* 406 B.R. 778, 789-90 (Bankr. Ct.

S.D. Ohio 2009).

As to the Promissory Notes transferred on December 8, 2008, beyond the two

year reach-back period for fraudulent transfer claims under § 548(a)(1), those are

time-barred transfers and dismissed from Count I of the Complaint.  There are no

genuine issues of material fact remaining that those transfers occurred beyond the two

year reach-back period under § 548(a)(1).  However, for the reasons set forth below,

the Promissory Notes transferred on December 8, 2008 are viable claims under Count

II of the Complaint.

### b.    July 6, 2009 Transfer

Regarding the Promissory Note transferred on July 6, 2009, as admitted by

Sandra Chambers, that transfer occurred within the two year reach-back period under

§ 548(a)(1).  Sandra Chambers argues that the Debtor transferred the promissory

notes to her for estate planning reasons and that the Trustee has provided no evidence

that  the transfer was made"with actual intent to hinder, delay or defraud any entity"

as required under § 548(a)(1).  Sandra Chambers further argues that the value for the

11

transfer was "love and companionship" (Doc. No. 17-6, Ex. E) and that the Trustee has provided no evidence that the Debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation" as set forth in § 548(a)(1). She also argues that at the time of the transfer, July 6, 2009, the Debtor was not insolvent since he transferred to her in August 2009 and October 2009, at least one boat, a parcel of property, and a trailer/camper. (Doc. No. 17-7, Ex. F) Sandra Chambers claims that if the Debtor had these additional property at the time of the transfer, he could not have been insolvent. Sandra Chambers asserts the Trustee has shown no evidence that the Debtor was insolvent at the time of the transfer.

The Trustee responds that contrary to Sandra Chambers' assertion, the "love and companionship" the Debtor received in exchange for the transfer is not a reasonably equivalent value under § 548(a)(1). The Trustee claims that the Debtor's own petition and schedules do not indicate any value received. As to whether the Debtor was "insolvent," the Trustee argues that the property owned by the Debtor at the time of the transfer, which Sandra Chambers claims shows the Debtor was not insolvent, are property exempt from the Estate under § 522. The Debtor argues that this property cannot be considered in establishing that the Debtor was insolvent at the time of the transfer. The Trustee asserts that the Debtor's own submissions and filings in February 2008 before the post-judgment divorce proceedings in state court,

12

show the Debtor was insolvent. The Debtor in those proceedings claimed he was retired, had no earned income and could no longer afford spousal support. The Trustee claims that it appears the Debtor had the same assets in 2010 set forth in his petition and schedules, as he had in 2009, except for two bank accounts in the amount of $750. The Debtor himself noted in his petition that the Debtor had $67,000 in liabilities with non-exemptible assets of $0. (Doc. No. 25-4, Ex. D)

Section 548(a)(1) does *not* require that the Trustee show *both* that the transfer was made with "action intent to hinder, delay, or defraud" *and* that the Debtor "received less than a reasonably equivalent value in exchange for such transfer" since the statute only requires that the Debtor show *either* in light of the word "or" in the statute. In this case, the Trustee argues in his response that the Debtor "received less than a reasonably equivalent value" when he transferred the Promissory Note to Sandra Chambers on July 6, 2009.

To determine reasonably equivalent value, the court must first consider whether a debtor received any value for the exchange. *In re Wilkinson*, 196 F. App's 337, 341 (6th Cir. 2006). If value was received, the court then determines whether the value received was reasonably equivalent to the value surrendered. *Id.* Attention is paid to the value received by the debtor on the date of the transfer, not on the value given by the transferee. *Id.* at 341-42. The calculation of reasonably equivalent value is

13

fact specific. *Id.* at 341.  The term "value" is defined as "property, or satisfaction or securing of a present or antecedent debt of the Debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor." 11 U.S.C. § 548(d)(2)(A).

Based on the Code's definition of "value" and looking at whether such value was received by the Debtor on the date of the transfer, the Court finds that Sandra Chambers has not carried her initial burden to show that the Debtor received value in exchange for the transfer of the Promissory Note to Sandra Chambers in July 2009. Section 548(d)(2)(A) is clear that "an unperformed promise to furnish support" is not "value."   Sandra Chambers testified that the transfer was for "love and companionship."  It could be construed that "love and companionship" at the time of the transfer may be considered an unperformed promise to furnish support which under the statute is not considered a value.  Although the Debtor may have received "love and companionship" from Sandra Chambers at the time of the transfer, he may have received the same "love and companionship" prior to the transfer.  Sandra Chambers failed to carry her initial burden that the "love and companionship" supports the value required by the statute since she has not shown that the "love and companionship" the Debtor received on the July 6, 2009 transfer date is different from the "love and companionship" the Debtor received prior to the time of the

14

transfer.

As to whether the Debtor was "insolvent" at the time of the July 6, 2009 transfer, the Court finds the Trustee has raised genuine issues of material fact regarding the Debtor's insolvency at that time. The Trustee submitted evidence based on the Debtor's statements and submissions during the post-judgment divorce proceedings in state court that he had no earned income and could no longer pay the alimony and attorney fees ordered by the state court. Also, the Trustee has shown that the property Sandra Chambers claims establishes that the Debtor was not insolvent at the time of the transfer may be considered exempt property that cannot be considered in determining whether the Debtor was insolvent at the time of the July 6, 2009 transfer of the Promissory Note. *See,* 11 U.S.C. § 101(32)(A)(ii)(Property exempted from the estate under section 522 is excluded from the term "insolvent."). Sandra Chambers failed to carry her initial burden in her summary judgment motion that the Debtor was not insolvent when he transferred the Promissory Note to her on July 6, 2009, the only Promissory Note remaining in Count I under § 548(a)(1).

Even if Sandra Chambers properly carried her initial burden to support her summary judgment motion, the Trustee has submitted sufficient evidence to create a genuine issue of material fact that there was insufficient value received by the Debtor in exchange for the transfer. The Trustee has also submitted sufficient

15

evidence to create a genuine issue of material fact that the Debtor was insolvent when he transferred the Promissory Note to Sandra Chambers.

### 3. Count II: Avoidance of Transfer, Michigan's Uniform Fraudulent Transfers Act

Sandra Chambers also seeks summary judgment as to the Trustee's avoidance of the four Promissory Notes noted above under the UFTA, M.C.L. § 566.31 *et seq*. alleged in Count II. Sandra Chambers asserts that the Trustee has failed to submit any evidence that the Debtor transferred the Promissory Notes to her "with actual intent to defraud his creditors" and that she paid no consideration for the transfer. Sandra Chambers raises the same reasons as in Count I to support her argument that she is entitled to judgment on Count II. Sandra Chambers claims that the notes were transferred for estate planning purposes, that the Debtor did not transfer substantially all of his assets, that the transfers made two years before the bankruptcy action do not meet the "shortly before" time frame where the Debtor incurred a substantial debt. Sandra Chambers asserts that the Debtor did not know that during the post-judgment divorce proceedings he would be liable for his ex-wife's attorney fees. She claims it was not until December 2010 when the Debtor was unable to pay his debts necessitating the bankruptcy petition.

The Trustee responds that there is evidence that the Debtor intended to defraud his creditors. The Trustee asserts that the transfers occurred amidst the post-

16

judgement divorce proceedings to avoid his spousal support obligation and that the transfers were not for "estate planning purposes." The Trustee claims that both the Debtor and Sandra Chambers have refused to provide any documents to the Trustee to support the claim that the transfers were for "estate planning purposes."

When a trustee seeks to avoid a fraudulent conveyance using state law, the trustee is asserting his authority under 11 U.S.C. § 544(b). *In re Allen,* 521 B.R. 613, 624 (Bkrtcy. W.D. Mich. 2014). The § 544 "strong-arm" provision allows the trustee to "step into the shoes" of a creditor in order to nullify transfers voidable under fraudulent conveyance acts for the benefit of all creditors. *Id.* (citing *In re Fordu,* 201 F.3d 694, 698 n. 3 (6th Cir. 1999)). M.C.L. § 566.34 state in relevant part:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation under either of the following:
>> (a) With actual intent to hinder, delay, or defraud any creditor or the debtor.
>> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor did any of the following:
>>> (i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.
>>> (ii) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Subsection (2) sets forth the factors in determining "actual intent," which are commonly referred to as the "badges of fraud:

> (2) In determining actual intent under subsection (1)(a), consideration may be given, among other factors to whether 1 or more of the following occurred:
>> (a) The transfer or obligation was to an insider.
>> (b) The debtor retained possession or control of the property transferred after the transfer.
>> (c) The transfer or obligation was disclosed or concealed.
>> (d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
>> (e) The transfer was substantially all of the debtor's assets.
>> (f) The debtor absconded.
>> (g) The debtor removed or concealed assets.
>> (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
>> (i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
>> (j) The transfer occurred shortly before or shortly after a substantial debt was incurred.
>> (k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

M.C.L. § 566.34; *In re Harlin*, 321 B.R. 836, 844 (E.D. Mich. 2005).  The badges of fraud set forth in § 566.34(2) are not exclusive.  *Al-Naimi v. Foodland Distributor, Inc.,* 2009 WL 1564956 at *1 (Mich. App. June 2, 2009).  The UFTA does not define "reasonably equivalent value," but courts have imported the analysis used in the Federal Bankruptcy Code.  *See, Willecke v. Toth*, 2009 WL 3153081 at *4 (E.D. Mich. Sept. 30, 2009).  The UFTA permits the avoidance of a fraudulent transfer so

18

long as it was made within six years before the cause of action is brought. *In re Lewiston,* 528 B.R. 387, 389 (Bkrtcy. E.D. Mich. 2015).

The Trustee filed the instant adversary proceeding in February 2011, therefore the 2008 and 2009 transfers of the four Promissory Notes at issue are within the six year reach back period under the UFTA. As to whether the Debtor had "actual intent" to defraud his creditors, the court may consider whether there exists at least one of the listed "badges of fraud" in subsection 2. The Trustee has met a few of the listed "badges of fraud" as set forth below.

Sandra Chambers, the Debtor's spouse, is an "insider" under the UFTA. *See,* M.C.L. § 566.31(g)(1)(A)("Insider" is a relative of the debtor.). The Trustee has submitted sufficient evidence to create a genuine issue of material fact that the Debtor retains control over the assets because Sandra Chambers is his wife. In addition, the Debtor's statement in Schedule J of his petition states that he "gives all of his monthly income to his wife, as she takes care of him and ensures that all of his monthly needs are provided for (including paying mortgage payments, utilities, food, clothing, car expenses, etc.)." (Doc. No. 25-1, Pg ID 375)

The Trustee has also shown that the Debtor effectively removed all his assets from the ability of his creditors to collect by transferring the Notes to his wife, Sandra Chambers. Without the interest from the Notes, as the Debtor asserts in his petition,

19

his income from Social Security and his pension in the amount of $1,662.30 is sufficient only to pay his monthly expenses of $1,662.00. (Doc. No. 25-1, Pg ID 374-75) As to whether Sandra Chambers has shown the transfers were made for "reasonably equivalent value," for the same reasons set forth in the analysis as to Count I, she has not met her initial burden on this factor.

Based on the documents and arguments submitted by the parties, the Court finds Defendant Sandra Chambers has not met her initial burden of showing she is entitled to summary judgment on count II of the Complaint. Other than her self-serving statements that the transfers were made for "estate planning purposes," no evidence was submitted to support this argument. In addition, the Trustee has shown that there remain genuine issues of material fact that the four Promissory Notes were fraudulently transferred under the UFTA. Sandra Chambers is not entitled to summary judgment as to Count II.

### 4.     Count III: Recovery of Avoided Transfer under 11 U.S.C. § 550 and for Injunctive Relief under 11 U.S.C. § 105

If transfers are avoided under §§ 544, 545, 547, 548, 549, 553(b) or 724(a), § 550 allows the trustee to recover, for the benefit of the estate, the property transferred. 11 U.S.C. § 550. Section 105 provides that the court may issue any order or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a). Where the fraud or bad faith is of such magnitude that no other

authorized remedy is sufficient to protect and safeguard the public, section 105(a) allows the court to take any action to prevent an abuse of process. *Id.; In re Sumerell,* 194 B.R. 818, 838 (Bkrtcy. E.D. Tenn. 1996). Because Sandra Chambers is not entitled to summary judgment as to Counts I and II as set forth above, she is also not entitled to summary judgment under Count III.

### B.  Trustee's Motion to Compel Sandra Chambers to Pay

The Trustee seeks to compel Sandra Chambers to pay the Trustee an unpaid balance of $15,000 pursuant to the Bankruptcy Court's Order dated March 2, 2011 ordering Sandra Chambers to pay $30,000 to the Trustee. The Trustee asserts that Sandra Chambers is in contempt for failing to comply with the Bankruptcy Court's Order.

Sandra Chambers responds that the Trustee's motion is untimely since the Bankruptcy Court entered the order in 2011 and it has been over two years since the order was entered. Sandra Chambers further states that the Bankruptcy Court amended its order on two occasions, March 9, 2011 and March 29, 2011. She does not deny that a court has the authority to enforce its orders.

The Court has the inherent authority to enforce its Orders through exercise of its contempt powers and that contempt power extends to injunctions. *United States v. United Mine Workers of America*, 330 U.S. 258 (1947); *Gunn v. Univ. Comm. to*

21

*End the War in Vietnam*, 399 U.S. 383, 389 (1970) ("an injunctive order is an extraordinary writ, enforceable by the power of contempt.  The judicial contempt power is a potent weapon.")  There are two types of contempt:  criminal and civil.  The real distinction between criminal and civil contempt is the nature of the relief sought and the purpose of that relief.  *Penfield Co. v. SEC,* 330 U.S. 585 (1947).  A contempt proceeding is civil if the purpose is "remedial" and intended to coerce the person into doing what he is supposed to do.  *Shillitani v. U.S.*, 384 U.S. 364 (1966).  Civil contempt is to coerce future compliance with the order and to compensate the opposing party for the party's violation of an order.  *United States v. Bayshore Associates, Inc.*, 934 F.2d 1391, 1400 (6th Cir. 1991).  Remedial or compensatory actions are essentially backward looking, seeking to compensate the complainant through payment of money for damages caused by past acts of disobedience.  *Garrison v. Cassens Transport Co.,* 334 F.3d 528, 543 (6th Cir. 2003)(quoting *Latrobe Steel Co. v. United Steelworkers,* 545 F.2d 1336, 1344 (3d Cir. 1976)).  Wilfulness is not a necessary element of civil contempt*.  McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1948); *TWM Mfg. Co. v. Dura Corp.*, 722 F.2d 1261, 1273 (6th Cir. 1983).  The burden of proof in a civil contempt proceeding is on the party seeking a contempt order but need not be beyond a reasonable doubt.  *Int'l Union, United Mine Workers of America, v. Bagwell,* 512 U.S. 821, 827 (1994). Civil

contempt sanctions, or those penalties designed to compel future compliance with a court order, are coercive sanctions and avoidable through obedience. *Id.* at 827. Civil sanctions may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard. *Id.*

In an Order dated March 2, 2011, the Bankruptcy Court ordered that "any and all payments due on the $50,000 Promissory Note shall be made to the Trustee, Samuel D. Sweet, beginning with the next installment." (Doc. No. 18-3, Pg ID 236) In addition, "Three Thousand ($3,000) Dollars per month be given to the Trustee from the other three Promissory Notes by the Defendants and that upon the Trustee's receipt of Thirty Thousand ($30,000) Dollars that all installments to the Trustee shall cease and that all remaining installments to be delivered to Sandra Chambers." (Doc. No. 18-3, Pg ID 236)

On March 9, 2011, the Bankruptcy Court entered a Corrected Order with similar language. The Corrected Order states that "any and all payments due on the $50,000 Promissory Note described above shall be made to the Trustee, Samuel D. Sweet, beginning with the next installment." (Doc. No. 23-2, Pg ID 307) The Order further states, "Three Thousand ($3,000) Dollars per month from the other three Promissory Notes described above shall be paid to the Trustee, beginning with the next installment, until the Trustee's receives Thirty Thousand ($30,000) Dollars."

(Doc. No. 23-2, Pg ID 307)

On March 29, 2011, the Bankruptcy Court entered the following Order:

**Order Taking Plaintiff's Motion for Preliminary Injunction
Under Advisement, For Status Conference, Order for
Scheduling of Bench Opinion Via Telephone and Order
Preserving the Status Quo Pending the Bench Opinion**

This matter having come before this Honorable Court on February 16, 2011 based upon the Trustee's Motion to a Preliminary Injunction; a hearing having been held on this matter; the Court, for the reasons stated on the record having determined the further review is needed and that nothing is to construed by the court's order that this is a final determination either way with regard to the Trustee's Motion; that this Order is being issued to protect potential irreparable harm to Plaintiff and given that the Court will issue a decision on the motion in two days there is no harm to any party from the entry of this and the Court being fully advised on the premises;

IT IS HEREBY ORDERED that this Court will take the matter under advisement and will issue a Bench Opinion telephonically on Friday, February 18, 2011 at 9:30 a.m.

IT IS FURTHER ORDERED that the Defendants, Sandra Chambers, MK Chambers Company, Chambers Enterprises I, LLC and Chambers Enterprises II, LLC are hereby prohibited from modifying the notes or doing anything to change the status quo until the Court's issuance of its Bench Opinion on February 18, 2011.

IT IS FURTHER ORDERED that the Court will hold a status conference following the Bench Opinion to discuss discovery and how soon this case will be ready for trial.

(Doc. No. 23-3, Pg ID 309-10)

The Court finds the March 29, 2011 Order confusing.  The Order indicates it

24

will issue an opinion on February 18, 2011 and that the status quo will remain until the bench opinion to be issued on February 18, 2011, yet the Order is dated March 29, 2011 which is after the February 18, 2011 date for when the bench opinion was to issue.  It appears that the prior two orders dated March 2, 2011 and March 9, 2011 were rulings on the preliminary injunction motion, yet the March 29, 2011 Order indicates that the preliminary injunction motion was under advisement, until the Bankruptcy Court issues its bench opinion on February 18, 2011.  The March 29, 2011 Order does not refer to either the March 2 or March 9, 2011 Orders, does not indicate that those two orders are vacated, and does not indicate that the Bankruptcy Court reconsidered those two orders.

It appears to the Court that the March 29, 2011 Order was entered in error. However, without any indication from the Bankruptcy Court that this is so, the Court is unable to determine which Order is in effect in order for the Court to determine whether Sandra Chambers is in contempt for failing to comply with the Bankruptcy Court's Order.  At this time, the Court denies without prejudice the Trustee's Motion to Compel Sandra Chambers to do what was ordered by the Bankruptcy Court.  The Court directs both parties to jointly request the Bankruptcy Court to clarify which Order is in effect, within 7 days from the date of this Order, and thereafter submit an update to this Court.  The Trustee may then renew its motion if appropriate.

25

### C.    Trustee's Motion to Compel Discovery

The Trustee moves the Court to compel Sandra Chambers to produce documents and to extend the dispositive motion deadline as set forth in the Court's June 10, 2014 Scheduling Order.  On September 25, 2014, the Trustee issued a Request to Produce Documents to and a Notice of Taking Deposition of Sandra Chambers.  The deposition of Sandra Chambers occurred on October 9, 2014. However, Sandra Chambers did not produce the requested documents objecting that it "requires a response on a date subsequent to the date on which discovery must be 'completed' in accordance with the Court's June 10, 2014 Scheduling Order." (Doc. No. 19-4, Pg ID 244-48) Sandra Chambers served the Objections to the Trustee on October 20, 2014.

Rule 37(a) of the Rules of Civil Procedures allows a party to make a motion to compel the opposing party to respond to discovery requests.  Fed. R. Civ. P. 37(a). If the *motion to compel is granted*, the court may impose sanctions, including reasonable costs and attorney fees.  Fed. R. Civ. P. 37(a)(5).   If a party *fails to comply with a Court's discovery order*, then the moving party may file a motion under Rule 37(b)(2) for more severe sanctions such as striking out pleadings, prohibiting a party from introducing matters into evidence or entering a default judgment or dismissal against the party failing to obey any orders.  Fed. R. Civ. P.

26

37(b)(2)(A). Dismissal or a judgment against the party is the sanction of last resort but a district court does not abuse its discretion in dismissing a case or entry of judgment even though other sanctions might be workable, if such is supported on the facts. *Beil v. Lakewood Eng'r and Mfg. Co.,* 15 F.3d 546, 552 (6th Cir. 1994); *Bell & Beckwith v. United States,* 766 F.2d 910, 912 (6th Cir. 1985).

Rule 16 permits the district court to amend a pretrial scheduling order provided that the movant demonstrates "good cause" which means a showing that the moving party was diligent in attempting to meet the case management order's requirements. Fed. R. Civ. P. 16(b)(4); *Inge v. Rock Fin. Corp.,* 281 F.3d 613, 625 (6th Cir. 2002). Whether to grant leave under Rule 16(b) falls within the district court's discretion. *Leary v. Daeschner,* 349 F.3d 888, 909 (6th Cir. 2003).

The Court's Scheduling Order in this case states that "All discovery shall be completed by 10/10/2014." (Doc. No. 13) The Trustee served Sandra Chambers with the Request for Production of Documents and Notice of Deposition on September 25, 2014. Sandra Chambers was deposed on October 9, 2014. On October 20, 2014, she served her Objections to the Request for Production of Documents on the Trustee. A party has 30 days to respond in writing to a request for production of documents. Fed. R. Civ. P. 34(b)(2).

The Trustee argues that although the request was served on September 25,

27

2014, Sandra Chambers could have responded to the request by the October 10, 2014 date set forth in the Court's Scheduling Order. It was not until October 20, 2014 when the Trustee was served with the objections indicating the time to respond was beyond the October 10, 2014 date. The Trustee filed the instant Motion to Compel on October 31, 2014. Other than claiming that the time to respond to the Trustee's Request for Production of Documents is beyond the date set forth in the Court's Scheduling Order, Sandra Chambers does not claim any other reason why she is unable to produce the documents requested by the Trustee. Sandra Chambers waited until after the October 10, 2014 date to object to the Trustee's September 25, 2014 request for documents. It would have been more collegial for Sandra Chambers' counsel to so notify the Trustee earlier that she required the full 30 days to respond to the request and that such date was beyond the Court's Scheduling Order so that the parties could have agreed to either informally or formally extend the date in order for Sandra Chambers to comply with the request to produce the documents. This is the first motion to extend the time filed by the Trustee before this Court. Although the Trustee could have requested the documents at an earlier date, Sandra Chambers does not assert that the Trustee filed the instant motion to harass or delay the proceedings. Sandra Chambers did not seek a protective order from the Trustee's discovery request. Sandra Chambers did not claim any prejudice if at that time, the parties were

28

given additional time beyond the October 10, 2014 date in order to allow Sandra Chambers the full 30 days to respond to the discovery request.

The Court exercises its discretion to extend the discovery in order for Sandra Chambers to respond to the Trustee's request for documents. It is noted a year has passed since the Trustee served Sandra Chambers with the discovery request, which means Sandra Chambers has now had sufficient notice and time to gather the requested documents.

## III.   CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendants' Motion for Summary Judgment **(Doc. No. 17)** is GRANTED IN PART AND DENIED IN PART as more fully set forth above. The three Promissory Notes transferred on December 8, 2008 are DISMISSED from Count I, but remain in Counts II and III. The Promissory Note transferred on July 6, 2009 remain in all three counts. Defendant Sandra Chambers remain as a Defendant on all four Counts alleged in the Trustee's Complaint.

IT IS FURTHER ORDERED that the Trustee's Motion to Compel Defendant Sandra Chambers to Pay the Remaining Payments Due Under Bankruptcy Court's Order Dated March 2, 2011 (sic) and Hold Her in Contempt **(Doc. No. 18)** is DENIED without prejudice. The parties will jointly inquire with the Bankruptcy

29

Court which Order is in effect within 7 days from the date of this Order and submit

an update to the Court within 30 days from the date of this Order. The Trustee may

renew the motion at that time if necessary.

IT IS FURTHER ORDERED that the Trustee's Motion to Compel Defendant

Sandra Chambers to Produce Documents and for an Extension of Motion Deadline

**(Doc. No. 19)** is GRANTED. Sandra Chambers must fully respond to the Request for

Production of Documents by October 23, 2015. The dispositive motion deadline for

the Trustee only is extended to November 23, 2015. Other dates are as follows:

| | |
|---|---|
| The Final Pretrial Conference is set for: | February 29, 2016, 2:30 p.m. |
| The proposed Joint Final Pretrial Order and any trial motions in limine are due: | February 22, 2016 |
| **The trial is set for:** | **March 15, 2016, 9:00 a.m.** |

S/Denise Page Hood\
Denise Page Hood\
United States District Judge


Dated: September 30, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 30, 2015, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry\
Case Manager

30