# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

In re:

      MERLE CHAMBERS,

                                Case No. 13-11127

      Debtor.                       Hon. Denise Page Hood

_____

      SAMUEL D. SWEET, Trustee,

                              (Bankruptcy Case No. 10-36716)

           Plaintiff,                (Adv. Proc. No. 11-03071)

      v.

      SANDRA CHAMBERS, MK CHAMBERS
      COMPANY, CHAMBERS ENTERPRISES, I, LLC,
      and CHAMBERS ENTERPRISES II, LLC,

           Defendants.

_____/

# OPINION AND ORDER GRANTING
# THE TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

## I.    BACKGROUND/FACTS

### A.    Trustee's Adversarial Proceeding

On May 9, 2013, the Court entered an Order withdrawing the reference from the Bankruptcy Court. (Doc. No. 7) Debtor Merle Chambers filed a Voluntary Petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court") on December 23, 2010. (Doc. No. 25-1) The Bankruptcy Trustee commenced an

adversarial proceeding on February 7, 2011 alleging several claims against Defendant Sandra Chambers and related corporate entities, Defendants MK Chambers Company, Chambers Enterprises I, LLC and Chambers Enterprises II, LLC. The claims include: Avoidance By the Trustee of the Transfer to Defendant (Sandra Chambers) Pursuant to 11 U.S.C. § 548(a)(1) (Count I); Avoidance by the Trustee of the Transfer to Defendant (Sandra Chambers) Pursuant to Michigan's Uniform Fraudulent Transfers Act ("UFTA") (Count II); Recovery of Avoided Transfer Pursuant to 11 U.S.C. § 550 (from Sandra Chambers) and Request for Injunctive Relief under 11 U.S.C. § 105 (Count III); and, Claim for Accounting of All Monies Paid Since Inception of Promissory Notes and Turnover Pursuant to 11 U.S.C. § 542 of All Records Monies Due and Owing under the Promissory Notes (Count IV) (All Defendants). (Comp., Doc. No. 17-4)

On July 10, 2015, the Court entered an Order pursuant to a stipulation entered into by the parties dismissing Defendants MK Chambers Company, Chambers Enterprises I, LLC and Chambers Enterprises II, LLC. (Doc. No. 29) The remaining Defendant is Sandra Chambers. On September 30, 2015, the Court entered an Order denying Sandra Chambers' Motion for Summary Judgment. (Doc. No. 30) This matter is before the Court on the Trustee's Motion for Summary Judgment. A response has been filed. The Court's factual recitation in its previous Order applies

2

in the instant motion.  (See, Doc. No. 30)

**B.     Promissory Notes**

On December 8, 2008, the Debtor assigned three Promissory Notes to his wife, Sandra Chambers, for no consideration, each in the amount of: $227,000 (dated October 1, 2007); $182,000 (dated October 1, 2007); and, $352,000 (dated October 1, 2007).  (Comp., Doc. No. 17-4, ¶¶ 12, 14, 15; Motion, Doc. No. 32, Exs. F, G, H)  On July 6, 2009, the Debtor assigned a fourth Promissory Note to his wife, Sandra Chambers, for no consideration, in the amount of $50,000 (dated September 1, 2005). (Comp., Doc. No. 17-4, ¶ 13; Doc. No. 32, Ex. I) The Trustee alleges that the payments made by the business entity Defendants to Defendant Sandra Chambers are detrimental to the Estate and its Creditors.  (Comp., Doc. No. 17-4, ¶ 18) At the time the Notes were transferred, the Debtor was indebted to numerous creditors, including, but not limited to the Debtor's ex-wife, Nadine Chambers, U.S. Bank, NA, Citi Mortgage, Inc., PNC Bank, Lapeer County Friend of the Court and Attorney John L. Lengemann, Nadine Chambers' attorney.  (Comp., Doc. No. 17-4, ¶ 24)

The Debtor and Defendant Sandra Chambers were married on April 24, 1993 and are still married.  Beginning in 2005, the Debtor sold his interest in the dismissed corporate entities, resulting in four promissory notes at issue noted above.  The Debtor took possession of all four promissory notes.  In 2008 and 2009, Debtor began

3

transferring certain properties to Sandra Chambers, including the four promissory notes at issue.

### C.   Divorce Proceedings between Debtor and Nadine Mae Chambers

On May 29, 2014, the Court of Appeals for the State of Michigan issued an opinion regarding a post-judgment divorce proceeding on the Debtor's petition to modify or terminate spousal support pursuant to a judgment of divorce between the Debtor and his previous spouse, Nadine Mae Chambers.  (Motion, Doc. No. 32, Ex. B, *See, Chambers v. Chambers,* Case Nos. 293640, 298229, 298834, Mich. Ct. App. May 29, 2014, Pg ID 539-49).   The opinion chronicled the post-judgment proceedings between the Debtor and his ex-wife, Nadine Chambers as noted below.

The Debtor and Nadine Chambers were married in 1955 and divorced on April 14, 1993.  The divorce judgment ordered that the Debtor provide permanent alimony to Nadine Chambers in the amount of $400 per week.  The Debtor moved to modify spousal support in 2005 and after a hearing, the trial court entered an order on August 19, 2005, amending the judgment of divorce to $1,500 per month permanent spousal support effective October 6, 2004.   In 2008, the Debtor again sought to modify or terminate spousal support. The Debtor alleged he could no longer afford spousal support because he had retired, had no earned income, and was receiving only $35,563 in social security and other retirement benefits.

4

After discovery, the trial court held an evidentiary hearing on September 26, 2008 as to the Debtor's finances. Evidence disclosed that the Debtor's interest in the various family companies was redeemed in October 2007, noting the four promissory notes at issue in this bankruptcy action. During the evidentiary hearing, the Debtor's counsel noted that Debtor's current spouse, Sandra Chambers, contributed to the post-divorce growth of the Debtor's assets. The Debtor's counsel stated that the promissory notes could be simply assigned and gifted to Sandra Chambers "as a fiction" and then they could say the Debtor "doesn't have any assets." The evidence also showed that the Debtor had a 24-month employment contract with M.K. Chambers Company beginning October 1, 2007 with an annual salary of $41,000. In an April 27, 2009 written opinion, the trial court determined that the interest on the promissory notes was income to the Debtor for the purpose of assessing his ability to pay spousal support and finding that the Debtor received $29,279.80 in average annual interest on three of the four promissory notes. Along with the Debtor's Social Security benefits, his salary and the interest from the notes, the Debtor's annual income was $97,845.

In a June 29, 2009 hearing on Nadine Chambers' motion for additional attorney fees, the Debtor argued that since the September 2008 evidentiary hearing, his income had been reduced because he had transferred his assets to his current spouse, Sandra

5

Chambers "for estate planning purposes."  The trial court granted the additional attorney fees requested by Nadine Chambers.

The Debtor filed another motion to terminate spousal support on October 16, 2009 claiming that he had retired on October 1, 2009 and had no "earned income," receiving only social security and Air Force retirement benefits.  In a November 30, 2009 order, the trial court dismissed the motion finding that there were no changed circumstances since the trial court's previous order, that the motion was frivolous and ordered $1,500 in sanctions against the Debtor.

While the Debtor's various appeals were pending before the appellate court, he ceased paying spousal support and did not pay the attorney fees as ordered by the trial court.  The trial court held show cause hearings on November 9, 2009 for failure to pay attorney fees and on November 30, 2009 for failure to pay spousal support. The trial court ordered the Debtor to pay the attorney fees and to pay all spousal support before January 19, 2010 or report to the county jail to serve 30 days for failure to comply with the order.  The appellate court denied leave to appeal as to the attorney fees and as to the spousal support order for lack of merit.

Nadine Chambers filed additional motions for attorney fees on January 5, 2010 and on February 8, 2010.  The Debtor responded that he had transferred his interest in the promissory notes to his current spouse and that all his assets were held jointly

6

with his current spouse or otherwise in retirement accounts not subject to process. After a hearing was held, the trial court entered an order on May 4, 2010 requiring the Debtor to pay $10,000 in attorney fees and costs, in addition to the $5,000 attorney fees ordered on February 3, 2010.

The appellate court found that the Debtor's annual income was five times that of Nadine Chambers: $97,845 versus $19,128 which supported the trial court's finding that the Debtor had the financial ability to assist in paying Nadine Chambers' attorney fees. The appellate court found that the Debtor's "post-hearing efforts to voluntarily limit his income with cooperation of the family business through his brothers and to shield his assets from legal process does not render the trial court's findings regarding the respective financial ability of the parties to afford attorney fees clearly erroneous." The appellate court noted that "there was no showing that defendant's machinations rendered the assets and the income from the assets unavailable to defendant."

As to the appeal regarding the sanctions imposed against the Debtor, the appellate court found that the Debtor's stated purpose in filing the petitions "to keep all his property and income for himself and his current spouse" would also injure Nadine Chambers. The appellate court found that despite the plain language in the divorce judgment that Nadine Chambers was entitled to "permanent" spousal support,

7

the Debtor "persists in pursuing a very lengthy, scorched-earth legal crusade seeking to implement his purported unilateral belief that his spousal support obligation should end at his retirement." The appellate court stated that the Debtor's belief "would have the effect of injuring plaintiff by limiting her support and depleting her savings in endless litigation." (Motion, Doc. No. 32, Ex. B, Pg ID 539-49)

## II.   ANALYSIS

### A.   Summary Judgment Standard of Review

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S.

8

317, 323-24 (1986).  Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  *Celotex Corp.*, 477 U.S. at 322-23.  A court must look to the substantive law to identify which facts are material.  *Anderson*, 477 U.S. at 248.

## B.   Count I: Avoidance of Transfer, 11 U.S.C. § 548(a)(1)

### 1.   Transfers

The Trustee seeks summary judgment as to the Trustee's claim in Count I for avoidance of transfer under 11 U.S.C. § 548(a).  Sandra Chambers agrees that there is no dispute that the Debtor's assignments of one September 2005 Promissory Note (on July 6, 2009) and three October 2007 Promissory Notes (on December 8, 2008) to her were "transfers" of the Debtor's property.  As this Court ruled in its Order regarding Sandra Chambers' Motion for Summary Judgment, the transfer of the Notes on December 8, 2008 was beyond the two years' filing date of the Debtor's December 23, 2010 bankruptcy petition.  (Doc. No. 30, Pg ID 471).  Sandra Chambers agrees that the transfer on July 6, 2009 of the September 2005 Promissory Note was within

the two years of the filing of the bankruptcy petition.  As to Count I, the only note at issue is the July 6, 2009 transfer of the September 2005 Promissory Note.

Section 548 of the Bankruptcy Code, in relevant part, allows avoidance of fraudulent conveyances:

> (a)(1) The trustee may avoid any *transfer* ... of an *interest* of the debtor in property, ... that was made or incurred on or *within 2 years before the date of the filing of the petition*, if the debtor voluntarily or involuntarily–
>
> *   *   *
>
> (B)(I) received less than a reasonably equivalent *value* in exchange for such transfer or obligation; and
>      (ii)(I) was *insolvent* on the date that such transfer was made or such obligation was incurred, *or became insolvent* as a result of such transfer or obligation; ...

11 U.S.C. § 548(a)(1)(italics added).

The term "transfer" is defined as "the retention of title as a security interest; the foreclosure of a debtor's equity of redemption" or "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with–(I) property; or (ii) an interest in property."  11 U.S.C. § 101(54)(B), (C), (D).  "In defining 'an interest of the debtor in property,' the Sixth Circuit looks to 11 U.S.C. § 541(a)(1), which provides that property of the estate includes 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" *In re Tri-City Turf Club, Inc.,* 323 F.3d 439, 443 (6th Cir. 2003).  Contingent interests are

10

property of the bankruptcy estate where the debtor's interest was sufficiently rooted in the pre-bankruptcy past. *See, In Re Edmonds,* 263 B.R. 828, 830 (E.D. Mich. 2001). A transfer which occurs outside the permissible two year reach-back period for fraudulent transfer claims provided under § 548(a)(1) is time barred and must be dismissed. *In re Grove-Merritt,* 406 B.R. 778, 789-90 (Bankr. Ct. S.D. Ohio 2009).

As admitted by Sandra Chambers, the September 2005 Promissory Note was transferred to her on July 6, 2009. The Trustee has met the transfer element under § 548.

### 2.      Value and Interest

The term "value" under this section "does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor." 11 U.S.C. § 548(a)(2). The term "value" is defined as "property, or satisfaction or securing of a present or antecedent debt of the Debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor." 11 U.S.C. § 548(d)(2)(A). To determine reasonably equivalent value, the court must first consider whether a debtor received any value for the exchange. *In re Wilkinson*, 196 F. App's 337, 341 (6th Cir. 2006). If value was received, the court then determines whether the value received was reasonably equivalent to the value surrendered. *Id.* Attention is paid to the value received by the debtor on the date of the transfer, not on the value given

11

by the transferee. *Id.* at 341-42. The calculation of reasonably equivalent value is fact specific. *Id.* at 341.

Sandra Chambers argues that as to the September 2005 Promissory Note, there remain genuine issues of material fact as to whether there was reasonably equivalent value in exchange for the transfer and whether the Debtor was insolvent. She claims that there are other facts to be considered besides the testimony she gave at her deposition when she testified that the transfer was for "love and companionship" or "gifts." Sandra Chambers argues that throughout her marriage to the Debtor, she contributed to and gave consideration for the Promissory Notes that Debtor transferred to her, including helping in the purchase of some of the Debtor's interest in M.K. Chambers Company and all of the Debtor's interest in Chambers Enterprises I, LLC and Chambers Enterprises II, LLC. She claims that the initial principal and interest on the Notes were deposited in commingled joint accounts and individual retirement accounts for the Debtor and Sandra Chambers. To support these arguments, Sandra Chambers submitted her Declaration, and the Debtor and Gerald Chambers' Declarations. (Resp., Doc. No. 34, Exs. 1, 2 and 3)

None of the Declarations submitted by Sandra Chambers support her argument that the transfer of the September 2005 Note was made other than for "love and companionship." Gerald Chambers, the President and Chief Executive Officer of

12

M.K. Chambers and the Debtor's brother, asserts that the September 1, 2005 Promissory Note to "Merle Chambers" was a redemption of a portion of the stock owned by "Merle Chambers" of M.K. Chambers Company. (Resp., Doc. No. 34, Ex., 3, Pg ID 723) Gerald Chambers further asserts that on July 6, 2009, M.K. Chambers Company "consented to an assignment from Merle K. Chambers to Sandra Chambers of the Promissory Note dated September 1, 2005 for the original principal amount of $50,000." (*Id.,* Pg ID 725) Gerald Chambers' Declaration supports the Trustee's position that the September 2005 Note was property of Merle Chambers *only* at the time of the transfer since Sandra Chambers was not identified on the Note, itself.

Nothing in Gerald Chambers' Declaration indicates that Merle Chambers received any value for the transfer to Sandra Chambers. Sandra Chambers' claim that somehow she had "interest" in the September 1, 2005 Note is not supported by the record she submitted. Although Sandra Chambers' and the Debtor's Declarations assert that they have throughout their 23 year marriage earned income, bought and sold property, maintained, improved, assigned and inherited property and commingled income with their joint assets, as to the specific September 1, 2005 Promissory Note, there is nothing to show that Sandra Chambers had any interest in that note. The Debtor in his Declaration asserts that the September 1, 2005 Promissory Note represented "a redemption of a portion of the stock *I owned* ..."

13

(Resp., Doc. No. 34, Ex. 2, Pg ID 664) The Debtor further asserts that "M.K. Chambers paid *to me*" annual payments of $10,000 on September 1, 2005 Promissory Note. (*Id.*, Pg ID 664)

Sandra Chambers' argument that because the payments were deposited to commingled accounts does not support her claim that she owned any interest in the September 1, 2005 Promissory Note. There is no genuine issue of material fact that the September 1, 2005 Promissory Note was owned by the Debtor as a redemption of the stock the Debtor owned in the M.K. Chambers company. Sandra Chambers has not shown she gave anything of value to the Debtor when the September 2005 Promissory Note was transferred to her, other than "love and affection." The Trustee has met his burden that the September 2005 Promissory Note was transferred to Sandra Chambers for no value and that she had no interest in the note until the transfer to her was completed.

### 3.    Insolvent

The Trustee argues that the Debtor's own submissions and filings in February 2008 before the post-judgment divorce proceedings in state court, show the Debtor was insolvent. The Debtor in those proceedings claimed he was retired, had no earned income and could no longer afford spousal support. The Trustee claims that it appears the Debtor had the same assets in 2010 set forth in his petition and

14

schedules, as he had in 2009, except for two bank accounts in the amount of $750. The Debtor himself noted in his petition that the Debtor had $67,000 in liabilities with non-exemptible assets of $0.  (Motion, Doc. No. 32, Ex. A)

Sandra Chambers responds that at the time the Debtor transferred the Promissory Notes to her on December 8, 2008, the Debtor had approximately $325,000 cash in joint bank accounts with her, that the Debtor was in the second year of his Employment Agreement with M.K. Chambers Company and was due to earn salary of $34,167, that there were two more annual payments of $20,000 owed to the Debtor under the terms of the September 1, 2005 Promissory Note, that the Debtor was receiving an Air For pension and Social Security benefits, that the Debtor had retirement accounts including an IRA valued at $38,965.09 and a 401k valued at $110,428.40, along with owning other property.

The Bankruptcy Code defines the term "insolvent" as:

> (A) with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of--
> > (I) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and
> > (ii) property that may be exempted from property of the estate under section 522 of this title; ...

15

11 U.S.C. § 101(32)(A).

Based on the Debtor's petition and schedules filed before the Bankruptcy Court, his assets were exempted and his statements before the divorce proceedings were that he was retired and had no earned income. The Court finds that Debtor is insolvent as defined by the Bankruptcy Code. At his creditors examination, the Debtor indicated he had the same assets in 2010 as he had on October 25, 2009, except for two bank accounts totaling about $750.00. (Motion, Doc. No. 32, Ex. D, Pg ID 573-74) Even if the Debtor had assets after the statements he made during the divorce proceedings in 2008 at the time of the transfer of the note, these assets are also exempt under 11 U.S.C. § 522.

Sandra Chambers' argument that at the time of the transfer on December 8, 2008, the Debtor had approximately $325,000 cash in joint bank accounts with her and the Debtor was in the second year of his Employment Agreement with M.K. Chambers Company and was due to earn salary of $34,167, contradict the Debtor's statements before the 2008 divorce proceedings. The Michigan Court of Appeals reiterated the findings of the Lapeer County Circuit Court that, based on the Debtors own filing dated February 2008, that he had retired and had no earned income, he could no longer afford spousal support. The appellate court further noted that the Debtor made the same argument in a different motion filed October 16, 2009 and that

as of October 2009, he only received social security and Air Force retirement benefits and that he would suffer hardship paying spousal support out of this income. (Motion, Ex. A, Doc. No. 32, Pg ID 540, 542-43)  Sandra Chambers' claim that the Debtor was not insolvent as of the December 8, 2008 transfer, is contrary to his statements before the Lapeer County Circuit Court in February 2008 and October 2009.  The appeals court noted that the Debtor's own counsel during an evidentiary hearing made the argument that the Debtor could simply assign the promissory notes to Sandra Chambers "as a fiction" to show that the Debtor had no assets.  (*Id.* at Pg ID 540) The trial court denied the Debtor's request to modify the spousal support based on the Debtor's interest in the four promissory notes at issue before this bankruptcy proceedings, which the Debtor thereafter transferred to Sandra Chambers after the evidentiary hearing before the state court in the divorce proceedings.

The doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position "either as a preliminary matter or as part of a final disposition." *Teledyne Indus., Inc. v. NLRB,* 911 F.2d 1214, 1218 (6th Cir. 1990).  The doctrine of judicial estoppel is utilized in order to preserve "the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *Id.*

17

The Court applies judicial estoppel to the Debtor's position before the divorce proceedings and in this bankruptcy action. The Court is aware that it is Sandra Chambers who is making this argument at this time, but it is the Debtor's position before the state courts and this Court that is critical to Sandra Chambers' argument. The Debtor's position before the divorce proceedings that he had no assets, including the promissory notes, since those he argued then prior to the transfers, also belonged to Sandra Chambers. He claimed then that he was retired and had no earned income and would suffer severe economic hardship if he had to continue paying spousal support. As to the joint account the Chambers held at the time of the transfer, the Debtor did not so disclose in the divorce proceedings and in his bankruptcy schedules. (Motion, Ex. 33, Ex. A, Pg ID 511) The bank accounts noted on the schedule indicate that these were funded entirely from the Debtor's social security income and military pension. (*Id.*) Even if so disclosed, those assets would be considered exempt and, therefore, cannot be considered to show solvency by the Debtor.

As the appellate court noted, the "evidence presented at the modification evidentiary hearing was extremely relevant to the determination regarding attorney fees. Defendant's [Debtor's] post-hearing efforts to voluntarily limit his income with cooperation of the family business through his brothers and to shield his assets from

18

legal process does not render the trial court's findings regarding the respective financial ability of the partes to afford attorney fees clearly erroneous." (Motion, Doc. No. 32, Ex. B, Pg ID 546)   Sandra Chambers cannot now argue in this bankruptcy proceeding that the Debtor's financial situation was different than what the Debtor asserted before the divorce proceedings or in his schedules.   The Court finds that the Debtor asserted the same position during the divorce proceedings as he does now, that he had no assets available to pay spousal support and/or attorney fees. Sandra Chambers is now asserting that the Debtor did have assets at the time of the transfer.   These are contrary positions as to the Debtor's financial condition.   The prior state court adopted the Debtor's contrary position that he believed he had no assets to pay the spousal support or attorney fees, but found that the evidence did not support the Debtor's position at that time, in light of the four promissory notes which at that time had not been transferred to Sandra Chambers.

Based on the above, the Court finds that the Trustee has met his burden as to the July 6, 2009 transfer of the September 2005 Promissory Note as required under § 548(a)(1).   There remains no genuine issue of material fact that the Debtor received less than a reasonably equivalent value in exchange for the transfer of the September 2005 Promissory Note, that Sandra Chambers had no interest in the note, and, as a result, the Debtor became insolvent on the date of the transfer or became insolvent

19

thereafter.  The Trustee is entitled to avoid the transfer of the September 2005 Promissory Note from the Debtor to Sandra Chambers.

### C.   Count II: Avoidance of Transfer, Michigan's Uniform Fraudulent Transfers Act

The Trustee seeks summary judgment as to Count II, the avoidance of the four Promissory Notes under the UFTA, M.C.L. § 566.31 *et seq*.  The Trustee asserts there are no genuine issues of material fact as to this claim.  Sandra Chambers responds that there are genuine issues of material fact in dispute that the transfers were fraudulent and that the Trustee cannot meet its burden of proof.

When a trustee seeks to avoid a fraudulent conveyance using state law, the trustee is asserting his authority under 11 U.S.C. § 544(b).  *In re Allen,* 521 B.R. 613, 624 (Bkrtcy. W.D. Mich. 2014).  The § 544 "strong-arm" provision allows the trustee to "step into the shoes" of a creditor in order to nullify transfers voidable under fraudulent conveyance acts for the benefit of all creditors.  *Id.* (citing *In re Fordu,* 201 F.3d 694, 698 n. 3 (6th Cir. 1999)).  M.C.L. § 566.34 state in relevant part:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation under either of the following:
> > (a) With actual intent to hinder, delay, or defraud any creditor or the debtor.
> > (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor did

20

any of the following:
> (I) Was engaged or was about to engage in a
> business or a transaction for which the remaining
> assets of the debtor were unreasonably small in
> relation to the business or transaction.
> (ii) Intended to incur, or believed or reasonably
> should have believed that he or she would incur,
> debts beyond his or her ability to pay as they
> became due.

Subsection (2) sets forth the factors in determining "actual intent," which are commonly referred to as the "badges of fraud":

> (2) In determining actual intent under subsection (1)(a), consideration may be given, among other factors to whether *1 or more* of the following occurred:
> (a) The transfer or obligation was to an insider.
> (b) The debtor retained possession or control of the property transferred after the transfer.
> (c) The transfer or obligation was disclosed or concealed.
> (d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
> (e) The transfer was substantially all of the debtor's assets.
> (f) The debtor absconded.
> (g) The debtor removed or concealed assets.
> (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
> (I) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
> (j) The transfer occurred shortly before or shortly after a substantial debt was incurred.
> (k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

M.C.L. § 566.34 (italics added); *In re Harlin*, 321 B.R. 836, 844 (E.D. Mich. 2005).

The badges of fraud set forth in § 566.34(2) are not exclusive. *Al-Naimi v. Foodland Distributor, Inc.,* 2009 WL 1564956 at *1 (Mich. App. June 2, 2009). The UFTA does not define "reasonably equivalent value," but courts have imported the analysis used in the Federal Bankruptcy Code. *See, Willecke v. Toth*, 2009 WL 3153081 at *4 (E.D. Mich. Sept. 30, 2009). The UFTA permits the avoidance of a fraudulent transfer so long as it was made within six years before the cause of action is brought. *In re Lewiston,* 528 B.R. 387, 389 (Bkrtcy. E.D. Mich. 2015).

As the Court ruled in its previous opinion, all four Promissory Notes at issue are within the six year reach back period allowed by the UFTA. As to whether the Debtor had "actual intent" to defraud his creditors, the court may consider whether there exists at least one of the listed "badges of fraud" in subsection 2. The Court has ruled that the Trustee has met a few of the listed "badges of fraud" as set forth below:

> Sandra Chambers, the Debtor's spouse, is an "insider" under the UFTA. *See,* M.C.L. § 566.31(g)(1)(A)("Insider" is a relative of the debtor.). The Trustee has submitted sufficient evidence to create a genuine issue of material fact that the Debtor retains control over the assets because Sandra Chambers is his wife. In addition, the Debtor's statement in Schedule J of his petition states that he "gives all of his monthly income to his wife, as she takes care of him and ensures that all of his monthly needs are provided for (including paying mortgage payments, utilities, food, clothing, car expenses,

22

etc.).” (Doc. No. 25-1, Pg ID 375)

> The Trustee has also shown that the Debtor effectively removed all his assets from the ability of his creditors to collect by transferring the Notes to his wife, Sandra Chambers. Without the interest from the Notes, as the Debtor asserts in his petition, his income from Social Security and his pension in the amount of $1,662.30 is sufficient only to pay his monthly expenses of $1,662.00. (Doc. No. 25-1, Pg ID 374-75)

(9/30/15 Order, Doc. No. 30, Pg ID 479-80)

The Trustee has shown that the Debtor had the actual intent to hinder, delay or defraud his creditors, specifically, his former wife and her counsel. As the Debtor's divorce counsel indicated on the record before the Lapeer County Circuit Court on November 9, 2009, the promissory notes were transferred beginning in 2008 in part because of alimony issues. (Motion, Doc. No. 32, Ex. E, Pg ID 595) Although the Debtor's counsel indicated that the attorney fees issue was not considered at the time of the transfers since the attorney fees were ordered in August 2009, the UFTA does not require a specific creditor's claim must arise prior to any transfer, but “ whether the creditor's claim arose before or *after* the transfer was made or the obligation was incurred.” M.C.L. § 566.34(1)(italics added).

As to whether Sandra Chambers has shown the transfers were made for "reasonably equivalent value," the Trustee has shown that the transfers were not made

23

for value as noted in the analysis above.  The Trustee is entitled to avoid the transfer of all four Promissory Notes (the $227,000 Promissory Note dated October 1, 2007; the $182,000 Promissory Note dated October 1, 2007; the $352,000 Promissory Note dated October 1, 2007; and the $50,000 Promissory Note dated September 1, 2005) transferred on December 8, 2008 and July 6, 2009 from the Debtor to Sandra Chambers under the UFTA.

### D.     Count III:  Recovery of Avoided Transfer under 11 U.S.C. § 550 and for Injunctive Relief under 11 U.S.C. § 105

If transfers are avoided under §§ 544, 545, 547, 548, 549, 553(b) or 724(a), § 550 allows the trustee to recover, for the benefit of the estate, the property transferred. 11 U.S.C. § 550.  Section 105 provides that the court may issue any order or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a).  Where the fraud or bad faith is of such magnitude that no other authorized remedy is sufficient to protect and safeguard the public, section 105(a) allows the court to take any action to prevent an abuse of process.  *Id.; In re Sumerell,* 194 B.R. 818, 838 (Bkrtcy. E.D. Tenn. 1996).

Sandra Chambers admits that she is the recipient of the four transfers of the four Promissory Notes at issue which were transferred for her benefit.  (Doc. No. 32, Ex. C) There is no dispute that the face amount of all the notes is $811,000.  (Motion,

24

Doc. No. 32, Exs. F, G, H, and I (Promissory Notes))  The Court finds the Trustee is entitled to recover the four notes at issue which were transferred from the Debtor to Sandra Chambers for the benefit of the bankruptcy estate under § 550.

## III.   CONCLUSION

For the reasons set forth above,

IT IS ORDERED that the Trustee Samuel D. Sweet's Motion for Summary Judgment **(Doc. No. 32)** is GRANTED.

IT IS FURTHER ORDERED that pursuant to 11 U.S.C. §§ 544, 548, 550 and the UFTA, M.C.L. § 566.34,  the Trustee shall recover for the benefit of the bankruptcy estate the four notes at issue (the $227,000 Promissory Note dated October 1, 2007; the $182,000 Promissory Note dated October 1, 2007; the $352,000 Promissory Note dated October 1, 2007; and the $50,000 Promissory Note dated September 1, 2005) which were transferred by the Debtor to Sandra Chambers.

IT IS FURTHER ORDERED that this action is designated CLOSED on the Court's docket.

s/Denise Page Hood
Honorable Denise Page Hood
Chief United States District Judge

Dated:  March 31, 2016

25

**Proof of Service**

The undersigned certifies that a copy of the foregoing **Opinion and Order** was served on the attorneys and parties of record herein by electronic means or U.S. Mail on <u>March 31, 2016.</u>

<u>s/LaShawn Saulsberry</u>
Case Manager to
Chief Judge Denise Page Hood